Brett J. Schreiber (SBN 239707)
Kimberly S. Trimble (SBN 288682)
Benjamin Koh (SBN 350712)
SINGLETON SCHREIBER, LLP
591 Camino de la Reina, Suite 1025
San Diego, California 92108
P: (619) 771-3473
F: (619) 255-1515
bschreiber@singletonschreiber.com
ktrimble@singletonschreiber.com
bkoh@singletonschreiber.com
Attorneys for Plaintiffs O.Y., decedent, A.Y. and W.Y.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| O.Y., decedent, by and through her successors in interest, W.Y. and A.Y.; W.Y., a minor by and through their Guardian ad Litem Jane Doe, individually, and as a successor in interest to O.Y.; A.Y., a minor by and through their Guardian ad Litem Jane Doe, individually, and as a successor in interest O.Y.,<br>        Plaintiffs,<br><br>v.<br><br>County of Contra Costa; City of Antioch; Jessika Fulcher; Worren Young, Sr.; Colleen Sullivan; Flynne Lewis; Contra Costa Regional Health Foundation; The Learning Center; Raji Ponnaluri; and Does 1 through 50, inclusive,<br>        Defendants. | Case No.: 24CV5154<br><br>**MOTION TO PROCEED UNDER PSEUDONYMS**<br><br>*Declaration of Jane Doe filed concurrently with this motion* |

Decedent-Plaintiff O.Y. and Plaintiffs W.Y. and A.Y., by and through their guardian ad litem, Jane Doe, respectfully move this Court to permit all Plaintiffs to proceed using pseudonyms. This is an action under 42 U.S.C. § 1983 and state law related to the horrific death of an 18-month-old child, O.Y. Plaintiffs W.Y. and A.Y. are the only surviving siblings of decedent. Jane Doe is their adoptive mother and guardian ad litem. Plaintiffs' complaint alleges multiple governmental agencies, including Contra Costa Child Protective Services and the Antioch Police Department, failed to take required action to safeguard and protect O.Y. from abuse at the hands of her biological parents, who ultimately killed her.

## FACTUAL BACKGROUND

O.Y. died while in the care and custody of her biological parents, Jessika Fulcher and Worren Young, Sr., who are also defendants in this civil action. The Alameda County Coroner's Office determined O.Y.'s death was a homicide. (Decl. Jane Doe ¶ 4.) O.Y. had suffered blunt force trauma to her head and body, which caused cranial injuries and extensive brain bleeds. (*Id.*) O.Y. had experienced repeated blunt force trauma to her groin or stomach, causing her pancreas to sever in half. (*Id.*) When her pancreas burst, enzymes poured into the rest of her body, "eating away" at her internally. (*Id.*) The medical director of Children's Hospital in Oakland opined that O.Y. received her fatal injuries approximately 72-hours before her death and that she suffered intense pain and distress before passing away. (*Id.* ¶ 5.)

Because of the nature and circumstances of O.Y.'s death, the juvenile dependency court ultimately terminated the parental rights of Fulcher and Young as to their other two minor children, Plaintiffs W.Y. (currently age 4) and A.Y. (currently age 2). (*Id.* ¶ 13.) The juvenile court determined that either Fulcher and Young were responsible for causing O.Y.'s fatal injuries and death. (*Id.* ¶ 6.)

To date, no one has been prosecuted for O.Y.'s death and Fulcher and Young have not been charged with any crime. (*Id*. ¶ 15.)

Throughout the juvenile dependency proceedings, Fulcher and Young consistently sought to maintain custody and control of W.Y. and A.Y. (*Id*. ¶ 7.) Jane Doe was the foster parent and caregiver to W.Y. and A.Y. during the pendency of the juvenile case and participated in court proceedings in that capacity. (*Id*. ¶ 8.) Ms. Doe became aware of conflict between Ms. Fulcher and Mr. Young, including that Young had been arrested due to a domestic violence incident involving Fulcher and that Young had allegedly threatened Fulcher during juvenile court hearing. (*Id*. ¶ 12.) Mr. Young and his sister approached Jane Doe during these dependency hearings and behaved strangely and made inappropriate remarks. (*Id*. ¶ 11.) They approached Ms. Doe to gain information about the children and to obtain her contact information, which she refused to provide. (*Id*.) Mr. Young and his sister persistently attempted to delay the termination of the biological parents' rights. (*Id*. ¶ 10.)

Jane Doe came to learn the following about Ms. Fulcher, Mr. Young, and their family:

    a. Jessika Fulcher, had an outstanding arrest warrant in Georgia related to drug charges involving methamphetamine. Mr. Young, also had outstanding arrest warrant in Georgia.

    b. Ms. Fulcher's mother, Tondrea Avans, is the (biological) maternal grandmother of W.Y. and A.Y. Tondrea Avans had outstanding arrest warrants in George for charges of: (1) trafficking methamphetamine/ amphetamine; (2) Racketeering Influenced Corrupt Organization; and (3) use of communication facilities to violate drug laws.

    c. Tondrea Avan (bio-grandmother) was also arrested and charged for an incident during which she evaded Florida law enforcement officers while in a car and where her co-defendant shot at the police.

    d. Mr. Young has a criminal history in Georgia extending back to 2015. He faced numerous charges related to methamphetamine and other drugs, including driving under the influence of drugs. Mr. Young was also charged with felony aggravated assault and disorderly conduct. He was further charged with inflicting corporal injury on a spouse/cohabitant.

    e. In August 2023, Mr. Young was charged in California with the following felony crimes: (1) mayhem; (2) assault by force likely to produce great bodily injury; and (3) attempted second degree robbery. Each of these three charges had an enhancement based on an allegation of great bodily injury. These charges stemmed from an incident during which Mr. Young bit and tore off another man's ear during an attempted robbery. Mr. Young plead guilty and was sentenced to a 2-year prison sentence but will be released in approximately early 2025.

On July 10, 2024, Jane Doe formally adopted W.Y. and A.Y. (*Id*. ¶ 2.) Jane Doe's identity was kept confidential and secret during the juvenile dependency case. (*Id*. ¶ 8.) Neither W.Y. nor A.Y. had any contact with the biological parents during the juvenile dependency proceedings. Adoption proceedings are also confidential in California and the names of the parties to the adoption proceedings are kept confidential. *See* Cal. Fam. Code § 9200.

## **LEGAL ARGUMENT**

In the Ninth Circuit, "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the

party's identity." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). It is true there is a presumption that a party's identity is public information and "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings." *Id*. at 1067. Nevertheless, parties are permitted to use pseudonyms when "nondisclosure of the party's identity 'is necessary [] to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id*. at 1067–68 (9th Cir. 2000) (internal citation and alteration in the original omitted).

A district court must balance five factors to determine whether a party should be permitted to proceed anonymously when an opposing party has objected: "(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, [] (3) the anonymous party's vulnerability to such retaliation, (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.,* 596 F.3d 1036, 1042 (9th Cir. 2010), *citing Advanced Textile Corp.*, 214 F.3d at 1068.

Plaintiffs address each factor in turn:

### 1. Severity of the threatened harm

In this case, O.Y.'s death was not accidental, but the result of volitional and intentional conduct by the biological parents, Fulcher and Young. Both biological parents, who are named as defendants in this case, have criminal histories. The criminal history of Young, the biological father, is particularly alarming given that he has repeatedly been charged with acts of violence and mayhem. Mr. Young persistently sought to maintain custody and control of the children during the dependency proceedings. W.Y. has exhibited behavior indicating that he suffered abuse while in the custody of biological parents. *See* Doe Declaration at ¶ 17. Given the violent nature of O.Y.'s death, and the extent to which she suffered before she

died, the potential harm to W.Y. and A.Y. is not negligible. In fact, it was so severe a juvenile court terminated the biological parents' parental rights.

### 2. *Reasonableness of the anonymous party's fears.*

Jane Doe's fears are not speculative but based on specific and articulable facts. Mr. Young has an extensive criminal history involving abuse of methamphetamine and multiple acts of violence, including biting another man's ear off. The circumstances of O.Y.'s death as well are indicative of a violent and threatening nature. Moreover, during the juvenile dependency proceedings, Jane Doe's identity and contact information were kept secret and the biological parents did not have any contact with A.Y. and W.Y. Revealing the identity of Jane Doe now will allow A.Y. and W.Y. to be identified and located.

### 3. *The anonymous party's vulnerability to retaliation.*

As the Fifth Circuit observed, children-plaintiffs are particularly vulnerable. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("we view the youth of these plaintiffs as a significant factor in the matrix of considerations arguing for anonymity here."). California, like many other states, shields the identity of children in sensitive court proceedings. For this reason, the anonymity of W.Y. and A.Y. was maintained throughout the dependency proceedings and adoption process. *See* Welf. Inst. Code § 827; Fam. Code § 9200.

### 4. *Prejudice to the opposing party*.

In this early stage of proceedings, there is no prejudice to the opposing party. The opposing party does not require the identities of the Plaintiffs to file any responsive pleading, or challenge the sufficiency of Plaintiffs' complaint. The Ninth Circuit has recognized that a party's need for anonymity and the presumption of open judicial proceedings may change as a case progresses. *Advanced Textile Corp.*, 214 F.3d at 1069. Plaintiffs recognize that the Court may have to revisit this issue as the exigencies of litigation develop. For example, a protective order may

be required to balance Plaintiffs' need for anonymity with Defendants' need for discovery. "It may never be necessary, however, to disclose the anonymous parties' identities to nonparties to the suit." *Id*. At this stage of proceedings, with respect to public filing of a complaint, Plaintiffs respectfully submit there is no prejudice to opposing party as Defendants do not require Plaintiffs' names to adequately prepare any responsive pleading.

5. *The public interest*.

Plaintiffs do not seek to keep the facts of this case hidden from public view. Plaintiffs, for example, have not sought to file this complaint under seal. This is a section 1983 action that challenges government conduct. Transparency of information regarding **conduct** facilitates the aim of section 1983 to hold government officials accountable. Plaintiffs only seek to protect their identities from public disclosure. Because the identities of children in sensitive juvenile proceedings are traditionally kept secret, there is no adverse impact on the public interest in allowing Plaintiffs to proceed anonymously in this case.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request leave to proceed anonymously at this stage of litigation. Plaintiffs understand that any order of the Court may be subject to further modification as litigation progresses.

Respectfully submitted,

DATED August 14, 2024            **SINGLETON SCHREIBER, LLP**

*s/ Brett Schreiber*
BRETT SCHREIBER
Attorneys for Plaintiffs